# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RAYMOND ZIELINSKI,
NATHALIE ZIELINSKI,
RAYMOND HELD,
DOROTHY HELD,
ROBERT BALLENGER,
VIOLA BALLENGER,
PETER CIURRO, and
LAVERNE CIURRO,
individually and as a class of persons
similarly situated,

    Plaintiffs,

v.    Case No. 04-C-0385

PABST BREWING COMPANY, INC.,
a Delaware Corporation,

    Defendant.

## DECISION AND ORDER

  The Plaintiffs, all of whom are retirees of the Schlitz Brewing Company ("retirees"), have brought suit against Pabst Brewing Company ("Pabst"). The retirees allege that Pabst, which has since come to own the retirees' benefits plan, made changes to the retirees' medical benefits that were a breach of contract under § 301 of the Labor-Management Relations Act ("LMRA"), and breach of the terms of the insurance plan and breach of

1

fiduciary duties under § 502 of the Employee Retirement Income Security Act ("ERISA"). Before the Court is the retirees' motion for certification of this litigation as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

On July 2, 2004, the retirees moved to certify this litigation as a class action. The Court, in its Order dated March 1, 2005, held the motion in abeyance so that the parties could conduct further discovery and file briefs "exclusively on the issue of whether prescription drug benefits are included as part of the $20,000 lifetime maximum." *Zielinski v. Pabst*, 04-C-385 (March 1, 2005). The Court stated that "[i]f prescription benefits are included in that lifetime maximum, the Court also needs to know how many members of the putative class have surpassed that lifetime maximum and would not have standing in this lawsuit." The parties complied with the Court's order by submitting their supplemental briefs.[1] After considering the arguments of the parties, the Court will grant the retirees' motion for class certification.

## BACKGROUND[2]

---

[1] While Pabst complied with the Court's order to submit a brief on the issue of whether the prescription drug benefits were included as part of the $20,000 lifetime maximum, Pabst also ignored the Court's Order by including in its brief arguments pertaining to additional issues that the Court did not ask it to brief. The Court will ignore these additional arguments. The Court's Order of March 1, 2005, specified that the parties file briefs "*exclusively* on the issue of whether prescription drug benefits are included as part of the $20,000 lifetime maximum." (emphasis added). By using the word "exclusively," the Court made plain that it did not intend to have the parties re-brief all the issues that may pertain to whether class certification should be granted. Accordingly, the Court will only consider that portion of Pabst's brief that addressed the one issue the Court ordered it to brief.

[2] Most of the essential facts were annunciated in the Court's Order of March 1, 2005, and need not be recited again here.

The retirees propose that the Court certify a class of persons "who as of 31 December 2003 (which is the day before the benefit changes went into effect) were receiving health benefits from Pabst pursuant to either the 6 November 1981 Schlitz/Local 9 closing agreement covering production employees or the 23 December 1981 Schlitz/Local 9 closing agreement covering the merchandising men and servicemen." (Pls.' Mot. for Class Certification ¶ 1.) After initially reviewing the retirees' motion for class certification, the Court decided it could not grant or deny the motion until a critical question was answered – namely, whether prescription drug benefits were included in the $20,000 lifetime maximum, and if they did, how many members of the putative class would have surpassed the lifetime maximum. This was a critical question because it was possible that many of the retirees would not be entitled to any additional benefits if their prescription drug benefits were included in their lifetime maximum, and thus could potentially "undermine the numerosity requirement of Rule 23(a)." *Zielinski v. Pabst*, No. 04-C-385 (March 1, 2005). The Court, therefore, ordered the parties to conduct discovery and brief the Court on these issues.

In their latest brief, the retirees' allege that in the course of discovery, they determined that there are 507 putative class members. Only fifty of those members potentially would have surpassed their lifetime maximum by December 31, 2003, if prescription drug expenses were included in the lifetime maximum. Pabst does not dispute this number.[3]

---

[3] In fact, Pabst admits that "information does exist" to show how many putative members do not have standing, but strikingly, refuses to share that with the Court. The Court, therefore, will take the number alleged by the retirees to be true.

3

## DISCUSSION

In determining whether to certify a class pursuant to Federal Rule of Civil Procedure 23, the Court limits its inquiry to whether the requirements of Rule 23 are satisfied, not the ultimate merits of the claim. *See Eggleston v. Chicago Journeymen Plumbers' Local Union, No. 130*, 657 F.2d 890, 895 (7th Cir. 1981). The party seeking class certification bears the burden of showing that certification is appropriate. *See Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1984).

Rule 23 of the Federal Rules of Civil Procedure provides a two-step inquiry for determining whether a class action suit is appropriate. First, the Court must consider whether the proposed class meets the four preliminary requirements of Rule 23(a), which are: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). FED. R. CIV. P. 23(a). Failure to meet any one of these prerequisites precludes certification. *See Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

Second, if the proposed class meets all the prerequisites of Rule 23(a), then it must also qualify under one of the three subsections of Rule 23(b). Here, the retirees look to Rule 23(b)(1) and Rule 23(b)(2) for certification. However, before determining whether the

4

requirements of Rule 23(b) are met, the Court will first analyze the prerequisites of Rule 23(a).

I.     Prerequisites of Rule 23(a)

  A.    Numerosity

The proposed class must be so numerous that joinder of all members is impracticable. FED. R. CIV. P. 23(a)(1). In determining impracticality, the Court need not find that joinder would be impossible, but only difficult or inconvenient. *See Great Neck Capital Appreciation Investment Partnership v. PricewaterhouseCoopers*, 212 F.R.D. 400, 407 (E.D. Wis. 2002). While the number of the proposed class is not always dispositive, generally, the numerosity requirement is met if there are forty or more members. *See Chandler v. S.W. Jeep-Eagle, Inc.*, 162 F.R.D. 302, 307 (N. Ill. 1995). Here, the undisputed number of proposed class members is at least 457, which is more than enough to meet the numerosity requirement.[4]

  B.    Commonality

Rule 23(a) also requires that there be a question of law or fact that is common to the entire class. FED. R. CIV. P. 23(a)(2). Pabst concedes that there is a common legal question at issue – namely, whether the changes that were made in the health benefits of the retirees

---

[4] As discussed above, the Court asked the parties to brief whether prescription benefits were included in the lifetime maximum because of the possibility that the numerosity requirement could be undermined. Further discovery revealed, though, that even if prescription benefits were included in the lifetime maximum, there still would be 457 class members, which easily allows the retirees to meet the numerosity requirement. The Court, therefore, need not now determine, for purposes of class certification, whether the prescription benefits apply towards the lifetime maximum. That issue can be addressed more appropriately in the context of the parties' pending summary judgment motions.

5

were lawful.

### C. Typicality

The claims of the representative parties must also be typical of the claims of the class. FED. R. CIV. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.* 713 F.2d 225, 232 (7th Cir. 1983) (quoting H. Newberg, *Class Actions* § 1115(b) at 185 (1977)). Even if there are factual differences between the claims of the representatives and that of the proposed class, as long as they have a similar legal theory, the typicality requirement is satisfied. *Id.*

As stated above, the representatives' claims and the claims of the putative class all arise from the same event – Pabst's modification of the health insurance benefits. In addition, all the claims are based on the same legal theories – namely, that the modification by Pabst of the retirees' health benefits is a violation of both § 301 of the LMRA and § 502 of ERISA. The claims of the representative parties, therefore, are clearly typical of those of the putative class.

### D. Adequacy

The final prerequisite of Rule 23(a) is that the representative party must fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a)(4). The test for determining adequacy of representation is twofold – (1) the named plaintiffs must have a

6

sufficient interest in the outcome of the case in order to ensure vigorous advocacy while having no interests antagonistic to the interests of the class, and (2) counsel for the named plaintiffs must be competent. *See Doe v. Guardian Life Ins. Co.*, 145 F.R.D. 466, 474 (N.D. Ill. 1992). Pabst does not contest the adequacy of the retirees' counsel, so the second prong of the adequacy test is satisfied.

Regarding the first prong, Pabst alleges that the named plaintiffs potentially could have a conflict with members of the putative class if the prescription drug benefits counted towards the $20,000 lifetime maximum. The Court disagrees. Pabst, in its latest brief, admits that "administrative problems" have made it difficult to determine whether any of the retirees would have exceeded the lifetime maximum if prescription drug benefits were tallied towards the maximum. Pabst decided, therefore, "that it will forgo the full enforcement of its right to count these benefits under the Plan." Because there is no showing that any of the named plaintiffs exceeded their lifetime maximum, there is no evidence that the interests of the named plaintiffs are antagonistic to the interests of the putative class. Accordingly, the adequacy requirement of Rule 23(a)(4) is satisfied.

II.    Requirements of Rule 23(b)

Because the prerequisites of Rule 23(a) have been satisfied, the Court turns now to step two of the class certification inquiry – that is, whether the putative class qualifies under any of the subsections of Rule 23(b). The retirees believe the putative class qualifies under both Rule 23(b)(1) and Rule 23(b)(2). The Court agrees that the putative class qualifies

7

under Rule 23(b)(1), and therefore, it need not inquire into whether the requirements of Rule 23(b)(2) are also met.

Rule 23(b)(1) provides that a class action may be maintained if the prosecution of a separate action by individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests . . . .

FED. R. CIV. P. 23(b)(1)

Rule 23(b)(1)(A) is applicable whenever "actions by or against a class provide a ready and fair means of achieving unitary adjudication." FED. R. CIV. P. 23 advisory committee's note. Such a situation arises when a party is obliged by the law to treat the putative class members alike. *See, e.g., First Fed. of Michigan v. Barrow*, 878 F.2d 912, 919 (6th Cir. 1989).

In the instant action, there is no dispute that the question of whether Pabst may legally modify the retirees' health benefits is central to each of the putative class members' claims against Pabst. The absence of class certification, therefore, would create the potential of multiple lawsuits against Pabst that could result in varying and inconsistent results. For instance, Pabst could be required to maintain insurance for some retirees at different levels than others. Such a result would "establish incompatible standards of conduct" for Pabst in its dealings with the retirees, and is precisely the situation Rule 23(b)(1) is intended to avoid.

8

Accordingly, the requirement of Rule 23(b)(1) is satisfied, and the Court will certify the class as requested by the plaintiffs.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Plaintiffs' Motion for Class Certification (Docket # 22) is **GRANTED.**

Dated at Milwaukee, Wisconsin this 30th day of November, 2005.

        BY THE COURT

        s/ Rudolph T. Randa
        **Hon. Rudolph T. Randa**
        **Chief Judge**